## Cannon v. Metry.

February 6, 1948.

William H. Field, Judge.

516

Robert E. Hogan for appellant.

Charles B. Zirkle and Samuel J. Stallings for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

On July 7, 1944, Morris Metry, having been called into military service, stored his meat market equipment with appellant, C. E. Cannon, whose warehouse is located at 813 West Main Street, Louisville. In August 1945, while home on furlough, Metry sold the equipment he had thus stored to Clifford L. Fetzer. It appears that Fetzer, by reason of the fact that as a salesman he had sold much of the equipment to Metry and through repeated calls at the market operated by Metry, was well acquainted with all of the articles that Metry had stored. The sale was consummated between Metry and Fetzer without either of them examining the stored merchandise. The agreed price was $1,725 and at the time of the sale neither of them knew that the equipment had been in flood water, the flood having occurred about March 1, 1945, while Metry was absent and away in U. S. service. Shortly after Metry's furlough was over and he had returned to service, Fetzer went to the warehouse for the equipment, at which time he first learned that the articles had been damaged. He picked up the articles and equipment but immediately got in touch with Metry's wife and informed her of the condition of the equipment, and further informed her that he could not take the articles unless there could be some adjustment in the matter. Whereupon, Metry's wife advised Fetzer that her husband would care for the

damage, which Fetzer advised her amounted to $689.50, the cost of repairs.

Upon Metry's return from service he instituted this action seeking damage in the sum of $689.50. Upon trial the jury rendered verdict in favor of Metry for that sum. The defendant prosecutes this appeal.

Appellant insists first that the demurrer to the petition should have been sustained because plaintiff does not anywhere allege that he has been damaged in any sum whatsoever. We find no merit in this contention of appellant. The petition simply states that pursuant to a contract with appellant certain electrical equipment and other objects were stored in appellant's warehouse. There is also found in the petition: "Plaintiff states that when he delivered his electrical equipment and other objects to the defendants, they were in an excellent state of condition; that when they were returned to him at a later date, they had been so damaged while in the defendants warehouse, that the difference in their reasonable market value in Louisville, Kentucky, at the time they were given to the defendants for storing and at the time they were returned to this plaintiff was and is the sum of $689.50." We think this allegation meets the test.

Appellant next insists that since the appellee had sold the articles and had parted with title appellee was not the real party in interest. He insists that this is just an attempt on the part of Fetzer, who bought the damaged equipment, to have Metry front for him in bringing an action to recover the sum of $689.50, the amount he claims to have expended in repairing it, and thus attempting to do indirectly what he cannot himself do.

Appellant seems to take the view that the purpose of this action is to benefit Fetzer and that Metry cannot bring the action for the benefit of some one else. This seems to be an erroneous conclusion on the part of appellant. Were that the actual condition here, then the cases of State Farm Mutual Auto Ins. Co. v. Hall, 292 Ky. 22, 165 S. W. 2d 838, and Monson v. Payne, Agent, 199 Ky. 105, 250 S. W. 799, cited and relied on by appellant, would be applicable. Here it is 'the appellee

who has been injured by the damage to the equipment stored with appellant. He is the person who placed it in storage. He is the person who sold it to Fetzer without any knowledge on his part or on the part of the purchaser, that the equipment had been damaged. It is he who must make the amount good to the purchaser. The loss on the face of this record is not Fetzer's but appellee's.

In construing Section 18 of the Civil Code of Practice, which provides that every action must be prosecuted in the name of the real party in interest, we said in Carey-Reed Co. v. Sisco et al., 251 Ky. 22, 64 S. W. 2d 430, 433: "Under this statute it is well settled that the real party in interest is one who has an actual and substantial interest in the subject-matter of the suit."

Appellant further cites the foreign case of Hecht v. Boston Wharf Co., 220 Mass. 397, 107 N. E. 990, L. R. A. 1915D, 725, Ann. Cas. 1917A, 445, where the plaintiff in that action had stored with defendant certain bags of wool. As a result of an unusually high tide the warehouse where the wool was stored was flooded and the wool damaged. The plaintiff had sold certain of this wool and received full payment for it, and then sought damages of the defendant, which were denied. The difference in that and this action is that the wool had been sold and title had passed before the high tide which damaged the wool. The plaintiff did not own the wool at the time it was damaged. Here the situation is different. The flood preceded the sale and Metry was the owner of the property at the time of the damage. Concluding then that Metry was the real party in interest, it becomes unnecessary to consider the question as to whether or not appellant waived this question by failure to raise it before trial.

Appellant in answer pleaded an act of God. It is insisted that under the evidence it could not reasonably be anticipated that the flood waters would reach the warehouse. Consequently, the appellant should have been given a peremptory instruction. In support of this view appellant says that the equipment weighed several thousand pounds and, consequently, was stored on the first floor of the warehouse; that when the flood waters started to rise he could not anticipate it would come as

high as it eventually did; that he relied on the radio, newspapers, and statements of the Mayor and meteorologist that the water would rise for 24 hours and then cease, and that by reliance upon these statements he could not anticipate reasonably that the water would rise as high as it did and that he did everything reasonably possible under the circumstances. In support of his position he cites Merchants Ice & Cold Storage Co. v. United Produce Co., 279 Ky. 519, 131 S. W. 2d 469, in which, as in the instant case, defendant by answer pleaded that it was not liable for an act of Providence and that it exercised all reasonable diligence safely to store and care for the commodity, and that the loss was entirely beyond its control and was the direct and proximate result of Providential cause.

In the case above it was proved that although the storage company relied somewhat on the report of the meteorologists concerning the flood condition, yet, it, out of an abundance of precaution, commenced the removal of the goods to a place of safety, and had commenced such removal while the water was yet gradually rising only two or three feet a day and while several feet away from entering the storehouse. It was during this removal that the waters took an unprecedented jump which no one could have reasonably expected.

In the instant case warehousemen had knowledge based upon the experience growing out of the floods of former years. Thus, we do not have the extreme situation as in the Merchants Ice case.

While the rule as laid down in the Merchants Ice case was correct under the circumstances there, yet under the evidence here we cannot say that as a matter of law appellant was entitled to a peremptory instruction. We think the court properly submitted the question to the jury for a determination of the question as to whether or not appellant was negligent in that he failed to exercise ordinary care.

Wherefore, the judgment is affirmed.